IN THE SUPREME COURT OF THE STATE OF MONTANA

OP 10-0345

M.B.J. and J.P.J.,

      Petitioners,

    v.

MONTANA FOURTH JUDICIAL DISTRICT
COURT, DEPARTMENT 2, The HONORABLE
ROBERT L. DESCHAMPS III,

      Respondent.

O R D E R

FILED

OCT 0 5 2010

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Petitioners M.B.J. and J.P.J., by counsel (Petitioners), have filed a Petition for Writ of Supervisory Control (Petition). Petitioners are prospective adoptive parents of an infant child who was placed with them by her birth mother in February 2009. The birth mother has filed a voluntary relinquishment of her parental rights and consent to adoption. Relying upon the Montana Adoption Act, §§ 42-1-101 through 42-10-128, MCA (Adoption Act), counsel for Petitioners represented in District Court that a birth father who is not married to the child's mother has the primary responsibility to protect his possible parental rights by complying with the requirements of the Putative Father Registry (the Registry). Section 42-1-108(2)(f), MCA. Absent such registration, counsel argued, an unmarried birth mother is under no statutory obligation to identify the birth father and provide personal service of notice of termination and adoption proceedings upon him. Petitioners complied with all provisions of the Adoption Act.

On November 6, 2009, following a hearing, the respondent District Court (Respondent) entered an order refusing to proceed with the adoption proceedings until such time as the birth mother provides the identity and location of the birth father to counsel for Petitioners so that he might be served with notice of the adoption proceedings and given the opportunity to be heard thereon. Respondent concluded that the Registry fails to adequately safeguard the interests and due process rights of Montana's birth

1

fathers who may be unaware of the birth mother's pregnancy and delivery of a child, and is therefore unconstitutional. Respondent further indicated in its order that failure of the birth mother to comply with the court's order may result in a contempt proceeding.

Subsequently, on November 18, 2009, counsel for Petitioners filed two documents in the District Court: (1) Motion to Reconsider Ruling and Brief in Support, wherein counsel argued that the putative father registry has been determined to be constitutional by the United States Supreme Court in *Lehr v. Robertson*, 463 U.S. 248 (1983) and sought reconsideration of the court's November 6 order; and (2) Motion for Order Allowing Service by Publication. The latter document was supported by the affidavit of counsel for Petitioners, in which counsel set forth his understanding via a conversation with the birth mother, that the putative father could be either of 2 individuals, both of whom she met and engaged in relations with while in an inebriated state, and neither of whom she has had further contact with since leaving Havre (the birth mother now resides out of state). Further, according to counsel's affidavit, the birth mother was unable to identify either person with any more specificity and was unable to furnish last names or other details sufficient to personally serve them with notice of these proceedings. Finally, counsel stated his belief that any further orders regarding service would not yield additional information from the birth mother sufficient to accomplish personal service. Counsel therefore sought leave to accomplish service of notice of the proceedings on the potential biological fathers by publication.

By order of December 1, 2010, Respondent denied both of the foregoing motions, and reaffirmed its order of November 6, 2009.

Petitioners seek supervisory control, and ask that we uphold the provisions of the Adoption Act and vacate the District Court's order so that the adoption may proceed.

Pursuant to Orders of this Court, the Respondent has filed an amended response to the Petition. In addition, with leave of court, the National Coalition for Men (NCFM) has filed an amicus curiae brief in support of Respondent's position, and Petitioners have filed a response to the Brief of NCFM. Both Respondent and NCFM argue that the Registry unconstitutionally denies putative fathers due process of law because these men

2

are deprived of notice that their fundamental parental rights are being terminated. The Respondent further maintains that the best interests of the child mandate actual notice to the birthfather. Respondent and NCFM therefore request that the Petition for Writ of Supervisory control be denied and the Respondent's decision affirmed. Petitioners oppose these requests and seek an order directing the Respondent court to finalize their adoption.

For the reasons set forth below, we conclude that the exercise of supervisory control is appropriate.

## ANALYSIS

For over a hundred years, we have held fast to the proposition that, where it is possible to resolve the merits of a case without resort to resolution of the constitutional question presented, we will do so. *Sunburst Sch. Dist. No. 2 v. Texaco*, 2007 MT 183, ¶ 62, 338 Mont. 250, 165 P.3d 1079. We will not pass upon the constitutionality of an act of the Legislature "unless it is absolutely necessary to a decision of the case." *State v. King*, 28 Mont. 268, 72 P. 657 (1903). We should be especially mindful of this rule here, as declaring the Registry provisions unconstitutional could cast into question hundreds of adoptions finalized over the past 14 years in reliance upon the Act's provisions.

Because the Respondent declared the Registry provisions of the Adoption Act unconstitutional, the parties and amicus focus their briefing on the constitutional question. However, none address what will happen to the child or the petition for adoption should we either uphold or reverse the Respondent's decision. We conclude that a decision on the constitutional question is not necessary to a resolution of this case in its present posture, and we therefore decline to resolve the constitutional issue.

As indicated above, under the Registry, the birth mother is not obligated to identify the birth father or serve upon him personal notice of the termination and adoption proceedings. While Petitioners insist these Registry provisions are constitutional, they have nonetheless submitted the affidavit of their counsel in support of a motion for leave to attempt service on the potential fathers by publication. See above. The affidavit sets forth details of counsel's conversations with the birth mother. (Notably, the birth mother

3

is not counsel's client and is thus not subject to his confidence or control). Petitioners offered the prospect of service by publication, in lieu of the less restrictive compliance with the Registry, in an effort to resolve the stalemate now existing in the District Court.

Were we to reach the constitutional issue and uphold the provisions of the Registry and Adoption Act, then—given Petitioners' compliance with the Adoption Act—this matter would be remanded with orders to proceed to finalize the adoption. Were we to declare the Registry unconstitutional, then—as the Respondent noted in its order of November 6, 2009—service of notice upon the potential fathers in accordance with § 42-2-605, MCA, would be required. Thus, *whether or not* we resolve the constitutional questions, there are only two alternatives: direct the court to immediately finalize the adoption, or order service on the potential father(s) by some means. We can therefore resolve the matter without reaching the constitutional question.

The question then becomes how service of notice would be accomplished.

The Court is mindful that the Respondent believes the birth mother knows the identity and whereabouts of the birth father. Indeed, she told the court that she did know who the father was. Transcript of Proceedings, September 29, 2009, page 12. Moreover, the Catholic Social Services Report, attached as Exhibit 1 to the Voluntary Relinquishment of Parental Rights and Consent to Adoption, reflects that the birth mother has chosen not to reveal the name of the baby's father. As counsel for Petitioners has stated in his affidavit, however, the birth mother insists that while she knows the nicknames of the two possible fathers, she cannot provide last names or locations of these men so as to accomplish service of notice upon them personally. These various representations are not necessarily inconsistent, as the birth mother may well know who the probable father is without knowing his last name or whereabouts. In any event, as counsel for Petitioners asserts that a contempt order will not bring any additional information from the birth mother, and the District Court has indicated that contempt proceedings may result without more information, there is a stalemate in these proceedings which will persist unless we exercise supervisory control.

4

Finally, we note that, under § 42-2-605(1), MCA, notice of hearing on a petition for termination of parental rights "must be served in any manner appropriate under the Montana Rules of Civil Procedure or in any manner that the court may direct on . . . a putative father." Understandably, in light of the statutory Registry provisions, service by publication upon an unidentified putative father is not provided for in M. R. Civ. P. 4(5)(D). However, § 42-2-605(1), MCA, does provide for alternative service "in any matter that the court may direct."

<u>DISPOSITION</u>

Because the adoption is not final and may never be so given the stalemate here, the normal appeal process is clearly inadequate. Moreover, unless the stalemate is resolved in a manner provided by law, a gross injustice will result. We therefore deem it appropriate to exercise supervisory control in this matter. Accordingly,

IT IS ORDERED:

1. The Petition for Supervisory control is GRANTED.

2. The District Court orders of November 6, 2009, and December 1, 2009, are VACATED.

3. Pursuant to § 42-2-605(1), MCA, the District Court is directed to accept the affidavit of counsel for Petitioners in support of motion for service by publication, and is directed to order service of process by publication upon the potential father(s), as proposed by counsel for Petitioners and as directed under § 42-2-605(2) and (3), MCA. Upon completion of service, the adoption shall proceed as provided by law.

4. The Clerk of this Court shall serve a copy of this Order upon all counsel of record and upon the Hon. Robert L. Deschamps III, District Judge, Montana Fourth Judicial District Court, Department 2, under Cause No. DA-09-10.

DATED this _____ of October, 2010.

_Patricia Cotter_

_W. William Beatly_

5

_____

_____

_____
Justices

Justice Jim Nelson concurs and dissents.

I agree with the Court that we should accept supervisory control; I also agree that we should not reach the constitutional issue and that the District Court orders of November 6, 2009, and December 1, 2009, should be vacated. I am not convinced, however, that the putative fathers in this case are entitled to any notice whatsoever, there being no evidence that either complied with the putative father registration laws at Title 42, chapter 2, part 2, MCA. Inasmuch as this Court's Order will not have precedential value, I am not going to take the time to develop this argument further. Suffice it to say that I am not persuaded by the rationale of the District Judge or the amicus brief filed by the National Coalition for Men. Rather, I am persuaded that putative father registry laws recognize the importance and utility of facilitating infant adoptions. Under circumstances in which the mother agrees that her infant child should be adopted, time is of the essence in placing an infant with the adoptive parents. I am not satisfied that the best interests of the infant or the adoptive parents here will be served by delaying the adoption in this case indefinitely simply to attempt to give notice to two irresponsible males who chose to have unprotected, casual sex with an intoxicated woman at a party.

_____
                    Justice